1
2
3
4
5
6           UNITED STATES DISTRICT COURT
7                DISTRICT OF NEVADA
8                      * * *

9  TRUSTEES OF THE CONSTRUCTION         )
   INDUSTRY AND LABORERS HEALTH         )
10 AND WELFARE TRUST; TRUSTEES OF       )    2:09-cv-02231-LRH-GWF
   THE CONSTRUCTION INDUSTRY AND        )
11 LABORERS JOINT PENSION TRUST;        )
   TRUSTEES OF THE CONSTRUCTION         )    ORDER
12 INDUSTRY AND LABORERS VACATION       )
   TRUST; TRUSTEES OF THE SOUTHERN      )
13 NEVADA LABORERS LOCAL 872            )
   TRAINING TRUST; TRUSTEES OF THE      )
14 CEMENT MASONS AND PLASTERERS         )
   HEALTH AND WELFARE TRUST;            )
15 TRUSTEES OF THE CEMENT MASONS        )
   AND PLASTERERS JOINT PENSION         )
16 TRUST; TRUSTEES OF THE CEMENT        )
   MASONS AND PLASTERERS VACATION       )
17 SAVINGS TRUST; AND TRUSTEES OF       )
   THE CEMENT MASONS AND                )
18 PLASTERERS JOINT APPRENTICESHIP      )
   TRAINING TRUST,                      )
19                                      )
             Plaintiffs,                )
20                                      )
    v.                                  )
21                                      )
   RUBEN G. VASQUEZ, an individual; and )
22 S&G FIREPROOFING, INC., a revoked    )
   Nevada corporation,                  )
23                                      )
             Defendants.                )
24 _____  )
25
26

Before the court are Plaintiffs' Motion for Default Judgment Against Defendant S&G Fireproofing, Inc. (Doc. #17), and Motion for Summary Judgment Against Defendant Ruben G. Vasquez (Doc. #18). Neither defendant has responded, and Plaintiffs have filed notices of such non-opposition (Doc. #20-21).

## I.   Facts and Procedural History

This case arises under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1462. Plaintiffs are trustees of various trust funds established pursuant to declarations of trust between the Laborers International Union of North America ("Laborers Union") and its affiliated locals, the Operative Plasterers and Cement Masons International Association ("Cement Masons Union") and its affiliated locals, and the employers that have executed collective bargaining agreements with the unions. One of those signatory employers is ADT Construction Group, Inc., also known as Advanced Demolition Technologies, Inc. ("ADT"), which employed persons who are members of or are represented by the unions. Defendant Ruben G. Vasquez ("Vasquez") is an officer, director and/or owner of ADT, and the president, secretary, treasurer and director of Defendant S&G Fireproofing, Inc. ("S&G"). S&G is a non-signatory to the agreements and a revoked Nevada corporation; however, it is alleged to have been the alter ego of ADT and created for the purpose of avoiding ADT's obligations to the trust funds under the agreements.

Under the agreements, ADT is obligated to make contributions to the trust funds on behalf of ADT's bargaining unit employees represented by the unions. ADT failed to make the required contributions to the trusts from January 2008 through December 2008, and it filed for bankruptcy in June 2008. *In re ADT Construction Group, Inc.*, No. 08-16841-MKN (Bankr. D. Nev.).

As ADT is protected by the automatic stay, Plaintiffs filed this action against Vasquez and S&G to recover the delinquent contributions and other damages. Plaintiffs claim that Vasquez, as an officer, director and/or owner of ADT with control over ADT's payment of contributions to the

trust funds, is personally liable for breach of fiduciary duty under ERISA.  (Doc. #1, p. 3.)
Plaintiffs also claim that S&G is liable as an alter ego of ADT.  (*Id.* at 4.)

On March 26, 2010, Plaintiffs served Vasquez personally (Doc. #7) and served S&G through service upon Vasquez (Doc. #8).  Vasquez, acting pro se and "for himself alone," filed an answer to the complaint, in which he denied most of Plaintiffs' allegations.  (Doc. #9.)  S&G failed to respond, and on May 21, 2010, the Clerk entered its default.  (Doc. #11.)  On January 12, 2011, Plaintiffs filed the instant motions for default judgment against S&G (Doc. #17) and for summary judgment against Vasquez (Doc. #18).  Neither party has responded.

**II.     Motion for Default Judgment as to S&G Fireproofing, Inc.**

Obtaining a default judgment is a two-step process governed by Federal Rule of Civil Procedure 55.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  First, Rule 55(a) provides, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, the court takes the factual allegations in the non-defaulting party's complaint as true.  Nonetheless, while entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right."  *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted).  Instead, granting a default judgment is in the court's discretion.  *Id.*  The following factors are relevant: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel*, 782 F.2d at 1471-72.

3

Plaintiffs' ERISA claim against S&G is solely based on a theory of alter ego liability.  They allege that S&G "is not a signatory to the CBAs [collective bargaining agreements] but acted at all times as an alter ego of ADT," that "S&G has been and is being used to avoid collectively-bargained obligations," and that "[a]s a result of its status as alter ego of ADT, S&G is obligated to the terms of the CBAs and Trust Agreements, including delinquent and ongoing contributions to the Laborers Joint Trust Funds and Cement Masons Joint Trust Funds."  (Doc. #1, ¶¶ 26, 40-41.)

"A non-signatory company may . . . be liable [for another's contribution obligations under ERISA] if the non-signatory is the 'alter ego' of the signing company, if the two entities are a 'single employer,' or if 'the interests of the nonsignatory and signatory parties are materially inseparable.'" *Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009) (citations omitted).  "These theories . . . attempt to determine whether the two entities are, in reality, one and the same.  If the non-signatory company is really the same as the signatory company, then it is fair to say that the purported non-signatory is actually a signatory, and therefore an 'employer who is obligated to make contributions' within the meaning of [29 U.S.C.] § 1145." *Id.* at 776-77.

The problem with holding S&G liable as ADT's alter ego in this case, however, is that ADT has filed for bankruptcy.  Where state law permits an alter ego claim to be asserted by a corporation in its own name, such a right of action is property of the estate, assertable only by the bankruptcy trustee or the debtor-in-possession, and a claim by a creditor against the debtor's affiliate based solely on an alter ego theory is therefore barred for lack of standing and under the automatic stay. *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (standing); *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc.* (*In re S.I. Acquisition, Inc.*), 817 F.2d 1142, 1152-53 (5th Cir. 1987) (automatic stay); *cf. Spartan Tube & Steel, Inc. v. Himmelspach* (*In re RCS Engineered Prods. Co., Inc.*), 102 F.3d 223, 227 (6th Cir. 1996) (concluding that the automatic stay did not apply because Michigan law does not permit a subsidiary to bring an alter ego claim against its

4

parent). As recognized by the Fifth Circuit in *S.I. Acquisition*, 817 F.2d at 1152-53, Nevada law is identical to Texas law in permitting a corporation to bring an alter ego claim in its own name. *See Henderson v. Buchanan* (*In re Western World Funding, Inc.*), 52 B.R. 743, 783-84 (Bankr. D. Nev. 1985). Accordingly, if S&G is the alter ego of ADT, as Plaintiffs allege and which this court accepts as true, they "are to be regarded as identical," *Frank McCleary Cattle Co. v. Sewell*, 73 Nev. 279, 282 (Nev. 1957), ADT "has an equitable interest in the assets of its alter ego," *Western World*, 52 B.R. at 784, and the right to assert an alter ego claim against S&G is property of ADT's bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case").

"[A]ny act to obtain possession of property of the estate or of property from the estate" is subject to the automatic stay. 11 U.S.C. § 362(a)(3). The automatic stay is "self-executing, effective upon the filing of the bankruptcy petition," and it acts as "an injunction issuing from the authority of the bankruptcy court." *Gruntz v. County of Los Angeles* (*In re Gruntz*), 202 F.3d 1074, 1081-82 (9th Cir. 2000) (en banc). Accordingly, actions taken in violation of the automatic stay, including judicial proceedings, are void. *Id.* (citing *Schwartz v. United States* (*In re Schwartz*), 954 F.2d 569, 571 (9th Cir. 1992)). Here, Plaintiffs' alter ego claim against S&G was filed in November 2009, long after ADT filed its bankruptcy petition in June 2008, and in violation of the automatic stay. Moreover, because any alter ego claim against S&G is property of ADT's bankruptcy estate, Plaintiffs, as third-party creditors, lack standing to assert such a claim outside the ADT bankruptcy proceedings. *See Kalb*, 8 F.3d at 133, 135.

For these reasons, Plaintiffs' motion for default judgment against S&G shall be denied, Plaintiff's alter ego claim shall be dismissed for lack of standing and as barred by the automatic stay, and S&G shall be dismissed as a defendant in this action.

**III.     Motion for Summary Judgment as to Ruben Vasquez**

   **A.  Failure to Respond**

While the nonmoving party's failure to file points and authorities in response to any motion is deemed to constitute consent to the granting of the motion under Local Rule 7-2(d), the failure to file an opposition, in and of itself, is not sufficient to grant summary judgment. *See Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003). The moving party must still meet its affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law. *Id.* Thus, the absence of an opposition does not change defendants' burden, and the court will consider defendants' motion on the merits.

   **B.  Summary Judgment Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *Id.* at 252.

**C. Discussion**

Plaintiffs allege that "Vasquez has breached his duty as an ERISA fiduciary to make the trust funds whole for all delinquent employee benefits and other amounts that are due from ADT." (Doc. #1, ¶ 17.) Consequently, Plaintiffs contend that "Vasquez is personally liable" to repay any and all losses resulting from such breach, including the unpaid employee benefits, liquidated damages, interest, administrative costs, and attorneys' fees and costs. (*Id.* at ¶ 18; *see also* Doc. #18, p. 15.)

Under ERISA, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach...." 29 U.S.C. § 1109(a). Plaintiffs, as trustees, may bring a civil action to enforce § 1109. *See id.* § 1132(a)(2); *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988). To determine whether Vasquez is personally liable under § 1109(a), the court considers (1) whether he is a fiduciary of the plans, and (2) whether he breached his fiduciary duties.

7

### 1. Fiduciary Status

In relevant part, ERISA defines a fiduciary as a person who exercises discretionary authority or control over the management of the plan or the plan's assets. *See* 29 U.S.C. § 1002(21)(A). Thus, Vasquez is liable as a fiduciary if (1) the unpaid contributions are trust assets, and (2) he exercised authority or control over those assets. *See Bd. of Trustees v. J.R.D. Mech. Services, Inc.*, 99 F. Supp. 2d 1115, 1120 (C.D. Cal. 1999).

#### a. Trust Assets

Plaintiffs contend the unpaid employer contributions became trust assets the moment they became due. The Ninth Circuit has held: "Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation . . . ." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000). Nonetheless, although the Ninth Circuit has not addressed the issue, other circuits and district courts in the Ninth Circuit following *Cline* have recognized an exception where the agreement governing the plan identifies unpaid employer contributions as plan assets. *See Rahm v. Halpin* (*In re Halpin*), 566 F.3d 286, 290 (2d. Cir. 2009) ("Although [the parties] were free to contractually provide for some other result, nothing in the Plan Documents indicates that they did so."); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003) ("The proper rule . . . is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise."); *see also Trustees of the S. Cal. Pipe Trades Health & Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F. Supp. 1156, 1165 (C.D. Cal. 2006) (finding that the statement in *Cline* did not preclude application of the "commonly applied exception when the plan document itself identifies unpaid employer contributions as a plan asset").

The court agrees with the reasoning of these courts. The Department of Labor has informally advised that the "assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law. In general, the assets of a welfare plan would

include any property, tangible or intangible, in which the plan has a beneficial ownership interest." 93 Op. Dep't of Labor 14A (May 5, 1993). Thus, to determine what is included in the plan assets, the court considers "any contract or other legal instrument involving the plan, as well as the actions and representations of the parties involved." *Id.*

Here, the declarations of trust provide that due but unpaid employer contributions are trust fund assets. (*E.g.*, Doc. #18-11, p. 40.) Furthermore, the collection policies and procedures adopted by the trusts provide that if employer contributions are not received by the 20th of each month following the month of work, the contributions are delinquent and the employer shall be "immediately liable" for the unpaid contributions. (*E.g.*, Doc. #18-19, p. 3.) Thus, any unpaid employer contributions became trust assets immediately upon their delinquency. Accordingly, the court finds that under the agreements governing the trusts, the unpaid contributions are trust assets.

### b. Exercise of Authority and Control Over Plan Assets

"The words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's beneficiaries, require that a person with authority to direct payment of a plan's money be deemed a fiduciary." *IT Corp. v. Gen. Am. Life Ins.*, 107 F.3d 1415, 1421 (9th Cir. 1997). "ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties—and to damages—under [section 1109(a)]." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (*citing* 29 U.S.C. § 1002(21)(A)); *see also Acosta v. Pac. Enters.*, 950 F.2d 611, 618 (9th Cir. 1991) ("[A] person's actions, not the official designation of his role, determine whether he enjoys a fiduciary status."). Thus, "[a] plan fiduciary includes not only those named as fiduciaries in the plan documents but anyone else who exercises discretionary control or authority respecting the plan's management or disposition of its assets." *Temecula Mech., Inc.*, 438 F. Supp. 2d at 1167.

1	The court has already concluded that the unpaid contributions qualify as assets of the trusts.
2	As such, if Vasquez had the authority to control and direct the payment of such unpaid
3	contributions, he is a fiduciary under ERISA.  To demonstrate that Vasquez has this authority,
4	Plaintiffs submit: (1) Vasquez was an officer, director and/or owner of ADT; (2) Vasquez was
5	authorized to determine if, when, and in what order ADT's creditors were paid; and (3) Vasquez
6	signed the proxy agreements for ADT, which obligated ADT to comply with the terms and
7	conditions of the pertinent master labor agreements and trust agreements.  (Doc. #18-2, pp. 2-5.)

8	Vasquez' mere designation as an officer, director, or owner does not establish that he is an
9	ERISA fiduciary.  *See Acosta*, 950 F.2d at 618 ("[A] person's actions, not the official designation
10	of his role, determine whether he enjoys a fiduciary status."); *see also* 29 C.F.R. § 2509.75-8
11	(noting that an officer of an employer that sponsors an employee benefit plan is not a fiduciary
12	solely by reason of holding such office).  Nonetheless, Vasquez' acts and responsibilities do
13	provide a sufficient basis to establish that he is a fiduciary.  *See Acosta*, 950 F.2d at 618; *Temecula*
14	*Mech., Inc.*, 438 F. Supp. 2d at 1168.  Vasquez' authority to control payments to ADT's creditors,
15	and his action in signing the proxy agreements on ADT's behalf, indicate that Vasquez had at least
16	some control over the unpaid contributions.  Because "'[a]ny' control over disposition of plan
17	money makes the person who has the control a fiduciary," *Gen. Am. Life Ins.*, 107 F.3d at 1421, the
18	court finds that Vasquez is a fiduciary within the meaning of ERISA.

19	Significantly, however, the court cannot conclude that Vasquez was a fiduciary in regard to
20	ADT's delinquent contributions during the entire period at issue, January to December 2008.
21	While Plaintiffs have submitted sufficient evidence to support a determination that Vasquez had
22	control over the disposition of unpaid contributions prior to ADT's bankruptcy filing in June 2008,
23	Plaintiffs have made no showing that Vasquez had such control thereafter.  Accordingly, Plaintiffs'
24	motion for summary judgment will be denied as to time period following ADT's bankruptcy filing.

25
26	10

The court finds that Vasquez was a fiduciary only as to contributions due during the time period from January 2008 until ADT's bankruptcy filing in June 2008.

### 2. Breach of Fiduciary Duties

An ERISA fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). Plaintiffs have established that Vasquez controlled the payment of employer contributions coming due from January 2008 until ADT's bankruptcy filing in June 2008, and Vasquez failed to make these contributions. Because Vasquez withheld benefits owing to the trusts, he breached his fiduciary duties.

### 3. Vasquez' Personal Liability

Under section 1109(a), any ERISA fiduciary who breaches his fiduciary duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." Plaintiffs have presented evidence of unpaid contributions and related damages owing for the period of January through December 2008. The court has determined, however, that Vasquez may be held personally liable as a fiduciary only for delinquent contributions due prior to ADT's bankruptcy in June 2008. The court is therefore unable to enter judgment in Plaintiffs' favor at this time. Before considering the amount of unpaid contributions, liquidated damages, interest, administrative fees, and attorneys' fees and costs recoverable, the court will allow Plaintiffs to submit additional briefing.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Default Judgment Against Defendant S&G Fireproofing, Inc. (#17) is hereby DENIED, and S&G Fireproofing, Inc. is DISMISSED as a defendant.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment Against Defendant Ruben G. Vasquez (#18) is hereby GRANTED in part and DENIED in part.

1  IT IS FURTHER ORDERED that Plaintiffs shall have thirty (30) days from the entry of this order to submit further briefing on the recoverable amounts of unpaid contributions, liquidated damages, interest, administrative fees, and attorneys' fees and costs, consistent with this order.

IT IS SO ORDERED.

DATED this 29th day of September, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE